# In the United States Court of Federal Claims

No. 17-1025 C
(Filed: August 11, 2017)
Reissued: August 29, 2017[1]

| | |
|---|---|
| AT&T CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CDW GOVERNMENT, LLC, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*Daniel R. Forman*, *Jonathan M. Baker, Judy Y. Choi, Daniel P. Wierzba, Christian N. Curran, and Sharmistha Das*, Crowell & Moring LLP, Washington, DC, attorney for plaintiff.

*Igor Helman*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

*David Michael Nadler*, Blank Rome LLP, Washington, DC, attorney for defendant-intervenor.

## OPINION AND ORDER

***SMITH*, Senior Judge**

This matter is before the Court on plaintiff's Motion for Preliminary Injunction and Declaratory Judgment and Motion for Judgment on the Administrative Record. A Court should always be reluctant to issue any injunctive relief. Injunctive relief intrudes upon the person's or agency's autonomy and decision making expertise. However, when it is required by the law and justice, the Court should not hesitate. It seems clear that if this Court does not restrain the Agency, it could set a precedent in which an agency can use its own actions to justify overriding

---

[1] An unredacted version of this opinion was issued under seal on August 11, 2017. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

the provisions of the automatic stay established by section 3553 of the Competition in Contracting Act ("CICA").  While a CICA stay might cost the government time and money, as well as be a general annoyance, Congress has determined that protecting the integrity of the government procurement system is a more important governmental goal.  Of course, the Court must adhere to Congress' determination.

Plaintiff, AT&T Corp. ("AT&T"), contests a United States Department of Commerce, Census Bureau's ("Agency" or "Census") override of the automatic stay of performance required by CICA, arguing that the override was arbitrary and capricious, without a rational basis, and contrary to law.  Plaintiff also requests that this Court enjoin the Agency from allowing the continued performance by CDW Government, LLC, ("CDW-G" or "defendant-intervenor") on Request for Proposals No. YA1323-17-LA-0001 ("RFP" or "Solicitation"), pending the outcome of AT&T's bid protest with the Government Accountability Office ("GAO").  For the following reasons, plaintiff's Motion for Declaratory Judgment is granted.

I.     **Findings of Fact**

The United States Constitution requires that the federal government conduct a census every ten years. U.S. Const. art. I, § 2, cl. 3.  The United States Department of Commerce, Census Bureau conducts the census by putting into place systems and procedures that allow the Agency to collect population and housing information from across the United States, and then disseminate that information to the President, the States, and the American people.  CDW Government, LLC's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction and Declaratory Judgment and its Cross-Motion for Judgment on the Administrative Record (hereinafter "DI's Resp.") at 2; Administrative Record (hereinafter "AR") 899.  For the upcoming 2020 Census, the Agency "intends to use mobile devices such as smartphones and tablets to assist with the data gathering for non-response follow-up, address canvassing, and several other large-scale operations."  Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction and Declaratory Judgment and Cross-Motion for Judgment on the Administrative Record (hereinafter "D's Resp.") at 4; AR 149.  Those devices must be "procure[d], configure[d], provision[ed], ship[ped], manage[d], and decommission[ed]," and they must come with "reliable network coverage for all areas" included in the 2020 Census.  *Id.*

Phase I of the Solicitation began on November 15, 2016, when Census issued the RFP to all 65 National Institute of Health, Chief Information Office-Commodities Solutions ("CIO-CS") contract holders.  AR 868-69.  The list of offerors was narrowed to five companies, and those companies were invited to participate in Phase II.  AR 869.  Phase II of the Solicitation was released on December 6, 2016.  *Id.*  Over the next few months, the Agency issued a series of amendments addressing the potential need for a Supply Chain Risk Assessment ("SCRA").  AR 470-71.  The SCRA was ultimately deemed unnecessary.  AR 478-79.  On March 23, 2017, Census responded to four offerors, including AT&T and CDW-G, asking them to address areas of concern in each of their respective proposals no later than April 3, 2017.  AR 484-87.  The contract evaluations, as well as another round of amendments, continued over the next few months, with the Agency completing its evaluation on June 20, 2017.  AR 874.  Census awarded the contract to CDW-G on June 23, 2017.  AR 894, 858.

On June 30, 2017, AT&T filed a protest at the GAO, arguing that "Census' decision to award to CDW-G was unreasonable and in violation of applicable procurement law." Plaintiff's Motion for Preliminary Injunction and Declaratory Judgment and Motion for Judgment on the Administrative Record (hereinafter "P's Mot.") at 7. In making that assertion, AT&T argued that the technical evaluation was unreasonable, particularly given that AT&T's proposal was priced ***. *Id.* The GAO informed the Agency of the protest, and on July 5, 2017, Census ordered CDW-G to stop work on the contract in accordance with CICA § 3553. AR 896-98.

On July 18, 2017, Census issued its Determinations and Findings ("D&F"), authorizing the override of the automatic CICA stay, and allowing CDW-G to resume work under the contract. AR 907. The D&F stated that any delay could "introduce[] adverse risk, unacceptable delays, and cost increases, and jeopardize[] the mission and quality of the 2020 Census Program." AR 906. It further concluded that there are "urgent and compelling circumstances which significantly, adversely affect the interests of the United States" and, as such, the "2020 Census schedule will not permit a delay." AR 907.

On July 26, 2017, AT&T requested that the GAO protest be conducted under expedited procedures. P's Mot. at 8. On July 28, 2017, the GAO denied the request. *Id.* Also on July 28, 2017, AT&T filed its Complaint for Declaratory and Injunctive Relief, asking that this Court "enjoin the United States Department of Commerce, Census Bureau [] from unlawfully proceeding on the performance of the 2020 Census Decennial Device as a Service ("dDaaS") task order." Complaint for Declaratory and Injunctive Relief (hereinafter "Compl.") at 1. Plaintiff's Motion for Preliminary Injunction and Declaratory Judgment is fully briefed and ripe for review.

## II.     Applicable Legal Standard

### A.     Jurisdiction and Standard of Review

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for an agency action. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). A motion for judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") assesses whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review. *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006); *Greene v. United States*, 65 Fed. Cl. 375, 382 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005)). Under Rule 52.1 of the RCFC, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum*, 404 F.3d at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id.* at 1355.

### B.     CICA Automatic Stay

When a bid protest action is initiated at the GAO, an automatic stay of the protested contract award is triggered under CICA until the protest action is resolved.  31 U.S.C. § 3553(c)(1).  This automatic stay serves the important purpose of preserving "competition in contracting and ensur[ing] a fair and effective process at the GAO."  *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 710 (2006) (citing *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 31 (2006)).  "An agency may override an automatic stay if it notifies the GAO in writing that either 'performance of the contract is in the best interests of the United States,' or 'urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.'"  *Nortel Gov't Sols., Inc. v. United States*, 84 Fed. Cl. 243, 247 (2008) (citing 31 U.S.C. § 3553(d)(3)(C)).  When an agency overrides a CICA stay, the Court reviews that decision pursuant to the standards established by the APA, 5 U.S.C. § 706.  *Planetspace Inc. v. United States*, 86 Fed. Cl. 566, 567 (2009); *Alion Science & Tech. Corp. v. United States*, 69 Fed. Cl. 14, 23 (2005).  A protestor challenging an override decision must establish that the "decision . . . was arbitrary and capricious."  *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 660 (2003).

In reviewing an agency's decision to override the CICA automatic stay, this Court has routinely applied the four-part test established in *Reilly's Wholesale Produce v. United States*. *Reilly's Wholesale*, 73 Fed. Cl. at 705.  *Nortel* sets forth the standard as follows:

> When asserting that urgent and compelling circumstances require immediate performance of a contract, there are several factors an agency must consider, including: (1) "whether significant adverse consequences will necessarily occur if the stay is not overridden;" (2) "whether reasonable alternatives to the override exist;" (3) "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare[] to the benefits associated with the approach being considered for addressing the agency's needs;" and (4) the impact of the override on competition and the integrity of the procurement system, as reflected in CICA.

*Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale Produce*, 73 Fed. Cl. at 711); *see also Superior Helicopter LLC v. United States*, 78 Fed. Cl. 181, 189 (2007).

The question before the Court is whether the Agency's D&F substantively met the arbitrary and capricious APA review standard that applies under 28 U.S.C. § 1491(b)(4).  *See RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999).  Under the legal scheme set out in *Motor Vehicle Manufacturers Ass'n. of the United States v. State Farm Mutual Automobile Insurance Co*, an agency decision

> would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to

-4-

the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

## III.   Discussion

### A.   The Reilly's Wholesale Test

When an agency is making a decision on whether or not to override the automatic CICA stay, application of the *Reilly's Wholesale* test is not required. However, it is a useful analytical tool for the Court in reviewing whether the override was arbitrary and capricious. "In highlighting these particular factors, our court is not substituting its judgment for that of an agency concerning aspects that are important for a particular procurement, but is rather identifying factors that would logically be necessary or irrelevant to override decisions in general." *Supreme Foodservice*, 109 Fed. Cl. at 386. While an agency is not required to incorporate the *Reilly's Wholesale* factors, in the case at bar, Census listed those factors in the D&F, outlining its consideration of each one. AR 902. The government argues that the *Reilly's Wholesale* factors are not dispositive, and that this Court could follow in the vein of *Planetspace Inc. v. United States* in solely applying the four factor test for injunctive relief. D's Resp. at 17; *Planetspace Inc.*, 86 Fed. Cl. at 567. However, given the substantive use of the *Reilly's Wholesale* factors by the Agency itself, it seems only logical that this Court use this analytical framework as well, consistent with the majority of other CICA override decisions in this Court.

The first factor in the *Reilly's Wholesale* test focuses on "whether significant adverse consequences will necessarily occur if the stay is not overridden." *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711). In its D&F, the Agency considers the first factor and finds that "[the] longer the length of the work stoppage, the greater the adverse impacts on the ability of the [United States Census Bureau] to ensure the engineering and mobile solutions and services are integrated, scalable, secure, and can perform for the 2018 End-to-End Census Test." AR 903. The Agency goes on to state that any delay in the execution of the procurement would amount to "unacceptable schedule delays and cost increases, and jeopardizes the mission and quality of the 2020 Census Program." *Id.* at 905. These, the Agency finds, are "urgent and compelling circumstances which significantly, adversely affect the interests of the United States." *Id.* at 906; *see also* 31 U.S.C. § 3553(d)(3)(C)(i)(II).

However, the Agency has not demonstrated any immediate threat to health, welfare, or safety, which are the types of circumstances that typically qualify as "urgent and compelling." *Supreme Foodservice* 109 Fed. Cl. at 387; *see also PMTech v. United States*, 95 Fed. Cl. 330, 345-46 (2010). While these are not the only circumstances that have led to an agency override being upheld, threats to health, welfare, or safety provide this Court with compelling circumstances affecting the public interest that most often tip the scales in favor of an override. The Court recognizes the importance of the decennial census, and its status as a Congressional and Constitutional priority, but the risks associated with testing delays are not risks to public

safety.  Furthermore, as plaintiff points out, all of the adverse consequences the Agency details will not *necessarily* occur, but are *potential* risks.  P's Mot. at 19.  After reviewing the government's evidence and arguments about the effects of the CICA stay, the Court finds that the override was based on a lot of speculation.  The Agency seems to treat its own schedule as a hard fact to prove its case.  This is undercut by three years spent on "market research," which caused the Agency to adopt a schedule in which this period of 100 days is allegedly critical.  The Agency's reasoning is speculative, and the argument that the test run must occur on April 1, 2018 is based on borderline ridiculous assumptions.  The Agency argues that it must begin the test on April 1, 2018, as the Census will begin on April 1, 2020, in order to control for weather and job market conditions.  They might as well have justified the date with the astrological settings!  The government's argument hinges on April 1, 2018 being set in stone.  While the Agency may find the stay inconvenient, as most stays generally are, convenience was not a factor Congress considered in enacting CICA.

The *Reilly's Wholesale* test's second factor is "whether reasonable alternatives to the override exist."  *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711).  In response to this question, the Agency determined that there are no reasonable alternatives available to address the issues arising from the 100-day stay.  AR 905.  The Agency makes this finding on the basis that "the [United States Census Bureau] does not have time to obtain devices from another contractor via competition."  *Id.*  The only option Census explored, according to the D&F, is extending the contract of a previous supplier.  *Id.*  While the alternative options suggested by the plaintiff may or may not be viable—as the government asserts—there is still nothing in the record that leads this Court to find that *no* other reasonable alternatives exist.  Further, nothing in the Administrative Record shows this Court that the Agency even engaged in a meaningful review of other reasonable alternatives.

The third *Reilly's Wholesale* factor examines "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare[] to the benefits associated with the approach being considered for addressing the agency's needs."  *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711).  The Agency estimated that the cost for the contractor to perform during the override is $1.5 million.  AR 906.  There is no further explanation or breakdown of the $1.5 million cost in the D&F, indicating to the Court that the Agency did not conduct a significant analysis of the cost and benefits of proceeding with the override.  For example, the Agency did not consider the additional costs should GAO sustains plaintiff's protest.  The Agency includes no reasoning to demonstrate that the benefits of the override outweigh the costs of proceeding with the CICA stay in place.  Thus, the cost-benefit analysis cannot be said to weigh in favor of the override.

The fourth factor in the *Reilly's Wholesale* test addresses "the impact of the override on competition and the integrity of the procurement system, as reflected in CICA."  *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711).  This Court has previously held that "Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest."  *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012).  "After repeated elaboration, it should be beyond controversy that the point of the CICA automatic stay was to enhance the GAO as a forum for bid protests, so that the integrity of the competitive procurement process could be

protected." *Supreme Foodservice*, 109 Fed. Cl. at 385; s*ee also*, *PMTech*, 95 Fed. Cl. at 346-47; *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 112 (2006); *PGBA, LLC*, 57 Fed. Cl. at 657-58. Essentially, "'the automatic stay is intended to preserve the *status quo* during the pendency of the protest so that an agency would not cavalierly disregard GAO's recommendations to cancel the challenged award,' thereby 'preserv[ing] competition in contracting and ensur[ing] a fair and effective process at the GAO.'" *Reilly's Wholesale*, 73 Fed. Cl. at 710 (alterations in original) (quoting *Advanced Sys. Dev.*, 72 Fed. Cl. at 31). By refusing to respect the CICA stay, the Agency has put itself in a primed position to, at a later point in the protest process, argue that it would be unfairly burdened if the award to CDW-G were set aside, because Census would be forced to replicate months' worth of work that had already been completed. If this Court were to allow the agency override to stand, it would ultimately be pulling the CICA teeth from the GAO, rendering it a government body with bark but no ability to bite. This is not what Congress intended. As such, this Court must invalidate the Agency's decision to override the stay.

**B.    Injunctive Relief**

Having found that the Agency was arbitrary in its override of the CICA stay in accordance with the *Reilly's Wholesale* test, this Court need not go further. While plaintiff's Motion was styled as one for a preliminary injunction, AT&T's claim is really asking for declaratory relief. "Declaratory relief is particularly appropriate in bid protest actions contesting agency stay override determinations entered pursuant to 31 U.S.C. § 3553(d)(3)(C)." *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005). This Court agrees with the reasoning set forth in *Chapman Law Firm*, which stated the following:

> Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lacks validity, in order to reinstate the statutory stay applicable during the GAO protest period. Declaratory relief preserves the scheme that Congress enacted.

*Chapman Law Firm*, 65 Fed. Cl. at 424. "Congress enacted a statute requiring *less* than the typical injunctive relief factors." *Supreme Foodservice GmbH*, 109 Fed. Cl. at 397 (emphasis in original). "In creating the CICA stay of performance, Congress decided that the injunctive relief factors need not be invoked when a bid protest is timely filed with the GAO, instead requiring that contract performance be stayed automatically." *Id.*; *see also* 31 U.S.C. § 3553(d)(3)(A)-(B). "To allow an arbitrary override to insert the injunctive relief requirements into the process would convert the CICA stay to something other than what Congress created." *Id.*

When making a determination on whether or not to apply an injunction, this Court typically evaluates the following four factors: 1) the likelihood of success on the merits; 2) whether plaintiff will suffer irreparable harm absent an injunction; 3) balance of harm to the respective parties if the injunction is either granted or not granted; and 4) the public interest involved in granting the injunction. *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *Mobile*

*Med. Int'l Corp. v. United States*, 95 Fed. Cl. 706, 742-43 (2010).  Regardless of Congress' decision to exclude the elements of a preliminary injunction from the CICA automatic stay, "the likelihood of success on the merits" factor is wholly inapplicable to CICA overrides.  The purpose of a preliminary injunction is to preserve the status quo during the pendency of a bid protest while the Court makes a decision on the merits.  When a plaintiff challenges an agency's decision to override the automatic CICA stay, the Court never proceeds to briefing or a hearing on the merits in the traditional sense.  Instead, the Court is asked to review the override, while the GAO engages in a review of the merits.  Once the Court has come to a decision on the override, jurisdiction over the protest reverts back to the GAO.  If this Court were to impose an injunction during its review of the CICA override, it would more closely resemble a permanent injunction, as it would ultimately dispose of the case in this Court.  However, a permanent injunction is not truly what the protestor seeks, because the protestor is not requesting the Agency cease all work in perpetuity, but rather that the Agency abide by the CICA stay.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that the decision to override the CICA stay of performance issued by the United States Department of Commerce, Census Bureau on July 18, 2017, was arbitrary, capricious, and contrary to 31 U.S.C. § 3553(d)(3)(C)(i), and is thus invalid.  The plaintiff's Motion for Declaratory Judgment on the Administrative Record in regard to the CICA override is **GRANTED**, plaintiff's Motion for Preliminary Injunction is **DENIED** as moot, and the Cross-Motions for Judgment on the Administrative Record by defendant and defendant-intervenor are **DENIED**.  As this Court believes the government to be a law-abiding party, the Court shall not impose a permanent injunction at this time.  However, this Court shall retain jurisdiction over this case pending the outcome of the protest at the GAO.  Until such a time as the GAO issues its decision, this case is **STAYED**.  Finally, this Court encourages the GAO to engage in an expedited review of AT&T's protest, per the plaintiff's original request and as it is in the interest of all parties and the public.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge